**STATE of Maine**

v.

**Catherine BOLDUC.**

Supreme Judicial Court of Maine.

Argued April 29, 1993.
Decided March 11, 1994.

David W. Crook, Dist. Atty., William Baghdoyan (orally), Asst. Dist. Atty., Skowhegan, for the State.

Ronald W. Bourget (orally), Bourget & Bourget, Augusta, for defendant.

Before ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

GLASSMAN, Justice.

Catherine Bolduc appeals from the sentence imposed following the entry of a judgment of conviction in the Superior Court (Somerset County, *Alexander, J.*) on her plea of guilty to a charge of manslaughter in violation of 17–A M.R.S.A. § 203 (Supp. 1993).[1] We agree with Bolduc's contention that the sentence imposed by the trial court is the result of an error in principle. Accordingly, we vacate the sentence.

The record discloses that at 5:51 p.m. on December 21, 1991, Bolduc, while driving in a northerly direction on Route 201, crossed into the southbound lane of traffic and proceeded for approximately one-half mile before colliding with a southbound vehicle. The operator of the southbound vehicle died as a result of the injuries received in the collision. As a result of a subsequent test, Bolduc's blood-alcohol level was measured at 0.19%.

On January 3, 1992, Bolduc was indicted for manslaughter in violation of 17–A M.R.S.A. § 203 and the aggravated operating of a motor vehicle while under the influence of intoxicating liquor in violation of 29 M.R.S.A. § 1312–B(2–A) (Pamph.1993). In March 1986 and in April 1987, Bolduc had been convicted of operating a motor vehicle while under the influence of intoxicating liquor (OUI), but had no other criminal record. Following her guilty pleas to the present charges, Bolduc was convicted on both charges and sentences were imposed. On the manslaughter conviction, a twenty-year period of imprisonment was imposed with all but twelve years suspended and six years of probation with a condition of her probation that she "shall not, under any circumstances whatsoever, operate, attempt to operate or be found behind the wheel of any motor

---

1. The classification of the crime of manslaughter occurring as the result of the reckless or criminally negligent operation of a motor vehicle was change from Class C to Class B by P.L.1983, ch. 217, § 3. The classification was later changed to Class A by the enactment of P.L.1989, ch. 872, § 1. By P.L.1987, ch. 808, § 1 (effective July 1, 1989) the statutory maximum sentence for a Class A crime was increased from twenty to forty years only for the most heinous and violent crimes. The statutory maximum sentence for Class C and Class B crimes remained five years and ten years, respectively.

vehicle." On the conviction for the aggravated operating of a *motor vehicle while under* the influence of intoxicating liquor, the court imposed a five-year period of imprisonment to be served concurrently with the sentence imposed for the manslaughter conviction.[2] Pursuant to 15 M.R.S.A. § 2152 (Supp.1993), we granted Bolduc leave to appeal the sentence imposed on the manslaughter conviction.[3]

▇▇ We review the propriety of a sentence for the misapplication of principle. *State v. Corbett,* 618 A.2d 222, 223 (Me.1992); *State v. Lewis,* 590 A.2d 149, 150 (Me.1991). We have previously recognized the intent of the Legislature that for a Class A offense the statutory maximum sentence beyond twenty years can be imposed only for "the most heinous and violent crimes that are committed against a person." *See* Statement of Fact, Comm.Amend. A to L.D. 2312, No. H–720 (113th Legis.1988). *See also State v. Hawkins,* 633 A.2d 78, 79 (Me.1993) (quoting *State v. Lewis,* 590 A.2d at 151). In the three-step process of sentencing, the trial court first determines the basic period of incarceration by reference to the offender's criminal conduct in committing the crime. *State v. Hewey,* 622 A.2d 1151, 1154 (Me. 1993); *State v. Kehling,* 601 A.2d 620, 625 (Me.1991). Under our sentencing principles, the mere classification of the charged offense does not automatically invoke the selection of the statutory maximum sentence as the basic period of incarceration. *See State v. Gosselin,* 600 A.2d 1108, 1110 (Me.1991). In evalu-

ating the nature and seriousness of the criminal conduct to determine the basic period of incarceration, consideration should be given to the basic period of incarceration that has been imposed for similar conduct of other offenders convicted of offenses within the same classification "to determine which act justifies the imposition of the most extreme punishment." *State v. Corbett,* 618 A.2d at 224 (quoting *State v. St. Pierre,* 584 A.2d 618, 621 (Me.1990)); *see also* Wathen, *Sentencing and Statistics,* 6 Me.Bar J. 290, 293 (1991) (mean average basic period of incarceration for vehicular manslaughter between October 1989 and April 1991 is seven years). The second step in the sentencing process is to individualize the basic period of incarceration to determine the maximum period of incarceration based on those aggravating and mitigating factors peculiar to the specific offender. *State v. Hewey,* 622 A.2d at 1154. As the final step, the court may then suspend a portion of the maximum period of incarceration for placement of the offender on supervised probation. The maximum period of incarceration, including any stated portion of that period that is suspended, becomes the final sentence imposed by the court. *Id.* at 1155.

▇▇ Applying the teaching of *State v. Lewis,* 590 A.2d 149 (Me.1991), the statutory maximum sentence that could be imposed on Bolduc following the manslaughter conviction was twenty years. The court selected twenty years as the basic period of incarceration with no mitigating factors.[4] We do not mini-

---

2. 29 M.R.S.A. § 1312–B(2–A) (Pamph.1993) provides in pertinent part:

   If the State pleads and proves that, while operating a motor vehicle in violation of this section, the actor in fact caused serious bodily injury ... to another person or in fact caused the death of another person, the sentencing class for the offense in subsection 1 [operating or attempting to operate a *motor vehicle while* under the influence of intoxicating liquor] is a Class C crime.

   The indictment for manslaughter charged that Bolduc recklessly or with criminal negligence caused the death of Stacie Lane with a motor vehicle. This same conduct was alleged as the basis for elevating the OUI charge to the greater punishment category of a Class C crime with a statutory maximum period of imprisonment of five years. Bolduc does not challenge the sentence imposed for this offense.

3. The general objectives of sentence review are: to provide for the correction of sentences imposed without due regard for the sentencing factors set forth by statute; to promote respect for law by correcting abuses of the sentencing power and by increasing the fairness of the sentencing process; to facilitate the possible rehabilitation of an offender by reducing manifest and unwarranted inequalities among the sentences of comparable offenders; and to promote the development and application of criteria for sentencing which are both rational and just. 15 M.R.S.A. § 2154 (Supp.1993).

4. The court stated, "We've had relatively light periods of incarceration in vehicular manslaughter cases, first offender situations. This is not the case." The record, however, reflects that Bolduc had no previous felony convictions.

mize the seriousness of the offense committed by Bolduc. Application of the considerations articulated in *State v. Corbett*, 618 A.2d at 224–25, however, leads us to conclude that the court's selection of the statutory maximum sentence that could be imposed for this type of Class A offense was a misapplication of principle.[5]

The entry is:

Sentence vacated.

Remanded to the Superior Court for re-sentencing.

ROBERTS, RUDMAN and DANA, JJ., concurring.

COLLINS, Justice, with whom CLIFFORD, Justice, joins, concurring.

I agree with the Court that Bolduc should be resentenced pursuant to the principles enunciated in *State v. Hewey*, 622 A.2d 1151 (Me.1993). On remand, the sentencing court will have the opportunity to articulate its reasons for selecting a basic sentence. I write separately, however, to state that, in my view, a vehicular manslaughter may justify a basic sentence in excess of twenty years. When the Legislature increased the maximum sentence for Class A offenses to forty years, *see* P.L.1987, ch. 808, codified at 17–A M.R.S.A. §§ 1252(2)(A), 1252–B (Supp.1993), it indicated that sentences in excess of twenty years could be appropriately imposed only for those few offenses that could be categorized as "among the most heinous and violent crimes committed against a person." *State v. Lewis*, 590 A.2d 149, 151 (Me.1991) (quoting the Statement of Fact attached to L.D. 2312, No. H–720 (113th Legis.1988)). In my view, some vehicular manslaughters could be categorized as most heinous and violent. *See, e.g., State v. Constantine*, 588 A.2d 294 (Me.1991) (defendant with .25% blood-alcohol level took parents' car without permission and in violation of agreement he signed with parents' insurance company, drove one mile on wrong side of road, at night, with no headlights on, colliding with and instantly killing another motorist). Such a categoriza-

tion would not be inconsistent with the intent of the Legislature. *See* P.L.1989, ch. 872 ("An Act to Increase the Penalty for Vehicular Manslaughter and to Remove the Habitual Drunk Driver from the Highways").

---

**5.** Bolduc's two previous convictions for operating a motor vehicle while under the influence of alcohol are aggravating factors properly consid-

ered only after the basic period of incarceration is determined.